# United States Court of Appeals
# For the District of Columbia Circuit

**SERVICE EMPLOYEES INTERNATIONAL UNION**

*Petitioner,*

v.

**NATIONAL LABOR RELATIONS BOARD,**

*Respondent.*

ON PETITION FOR REVIEW OF A FINAL RULE OF THE NATIONAL
LABOR RELATIONS BOARD

**BRIEF OF THE AMERICAN FEDERATION OF LABOR-CONGRESS
OF INDUSTRIAL ORGANIZATIONS AS *AMICUS CURIAE* IN
SUPPORT OF SEIU**

MATTHEW GINSBURG
MANEESH SHARMA
AFL-CIO
815 Black Lives Matter Plaza NW
Washington, DC 20006
(202) 637-5336
msharma@aflcio.org

*Counsel for Amicus Curiae*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties and *Amici*

All parties appearing in this action are listed in the Petitioner's merits brief, except instant *amicus* American Federation of Labor-Congress of Industrial Organizations.

### B. Rulings Under Review

A reference to the rulings at issue appears in the Petitioner's merits brief.

### C. Related Cases

Any related cases are listed in the Petitioner's merits brief.

Date: October 3, 2025

/s/ Maneesh Sharma
Maneesh Sharma
AFL-CIO
815 Black Lives Matter
Plaza, N.W.
Washington, DC 20006
(202) 637-5336
msharma@aflcio.org

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT AND RULE 29 STATEMENTS

Pursuant to Federal Rule of Appellate Procedure 26.1, the American Federation of Labor-Congress of Industrial Organizations (AFL-CIO) states that it is not a publicly traded corporation, and is a federation of labor organizations. No publicly held company has 10% or greater ownership of the organization.

Pursuant to FRAP Rule 29(4)(E), the AFL-CIO states that no counsel for a party authored this brief in whole or in part, no party or counsel for a party contributed money that was intended to fund preparing or submitting this brief, and no person other than *amicus* or their counsel contributed money that was intended to fund the preparation or submission of this brief.

Date: October 3, 2025

/s/ Maneesh Sharma
Maneesh Sharma
AFL-CIO
815 Black Lives Matter
Plaza, N.W.
Washington, DC 20006
(202) 637-5336
msharma@aflcio.org

*Counsel for Amicus Curiae*

1

# Table of Contents

INTEREST OF AMICUS CURIAE..............................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ..........................1

ARGUMENT ............................................................................................5

I.  The Board's Joint-Employer Rule is Inconsistent with the Common Law and the Policies of the Act...............................................................5

  A.  The Board's 2020 Rule Eliminates Consideration of Reserved and Indirect Control, and Control over Mandatory but Non-"Essential" Terms, from the Joint Employer Analysis.....................6

  B.  The Board's Treatment of Reserved and Indirect Control, and Control over Mandatory Subjects of Bargaining Other Than the Delineated Essential Terms, has no Basis in the Common Law of Agency ...............................................................................................11

  C.  The Board's Current Joint-Employer Rule is Not Justified by the Policies of the Act, and Indeed, it Undermines those Policies...22

II.  The Joint-Employer Rule is Arbitrary and Capricious Because its Framework Requires the Board and the Regulated Community to Categorize a Putative Joint Employer's Various Forms of Control, But the Rule Offers No Guidance How to Do So .......................................25

CONCLUSION ......................................................................................28

**Cases**

*Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981 (9th Cir. 2014) ................................................................... 18

*Allbritton Commc'ns Co.* v. *NLRB,* 766 F.2d 812 (3d Cir. 1985) ............ 17

*ARA Leisure Servs., Inc. v. NLRB*, 782 F.2d 456 (4th Cir. 1986) ........... 17

*Auciello Iron Works, Inc. v. NLRB*, 517 U.S. 781 (1996) ........................ 23

*Browning-Ferris Indus. of California, Inc. v. NLRB*, 911 F.3d 1195 (D.C. Cir. 2018) ...................................................... 1, 2, 11, 13, 14, 15, 16, 19

*Browning-Ferris Industries of Cal., Inc.*, 370 NLRB No. 86 (2021) ....... 21

*Browning-Ferris Industries of California, Inc. d/b/a BFI Newby Island Recyclery*, 362 NLRB 1599 (2015) .................................................... 1, 27

*Carrier Corp. v. NLRB*, 768 F.2d 778 (6th Cir. 1985) ............................ 17

*Chicago, Rock Island & Pacific Ry. Co. v. Bond*, 240 U.S. 449 (1916) ... 14

*Clackamas Gastroenterology Associates, P. C. v. Wells*, 538 U.S. 440 (2003) ................................................................................ 14

*Community of Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) ....... 25

*Dovell v. Arundel Supply Corp.*, 361 F.2d 543 (D.C. Cir. 1966) ............. 15

*FCC v. Prometheus Radio Project*, 592 U.S. 414 (2021) ......................... 25

*Garcia-Celestino v. Ruiz Harvesting, Inc.*, 898 F.3d 1110 (11th Cir. 2018) ................................................................... 18

*Grace v. Magruder*, 148 F.2d 679 (D.C. Cir. 1945) ................................ 16

*Indus. Personnel Corp. v. NLRB*, 657 F.2d 226 (8th Cir. 1981) ............. 20

*Int'l Chemical Workers Union Local 483 v. NLRB*, 561 F.2d 253 (D.C. Cir. 1977) .................................................................. 15

International Union v. Clark, No. 02-1484, 2006 WL 2598046 (D.D.C. 2006) ...................................................................... 20

*Logue v. United States*, 412 U.S. 521 (1973) ........................................ 15

*Michigan v. EPA*, 576 U.S. 743 (2015) ................................................ 25

*N. Am. Soccer League v. NLRB*, 613 F.2d 1379 (5th Cir. 1980) ............. 17

*Nat'l Mutual Ins. Co. v. Darden*, 503 U.S. 318 (1992) ............................ 17

*NLRB & Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937) .................... 25

*NLRB v. Associated Diamond Cabs, Inc.*, 702 F.2d 912 (11th Cir. 1983) .................................................................................. 18

*NLRB v. Browning-Ferris Industries, Inc,* 691 F.2d 1117 (3d Cir. 1982) .................................................................................. 20

*NLRB v. Maine Caterers, Inc.*, 654 F.2d 131 (1st Cir. 1981) ................ 17

*NLRB v. United Ins. Co. of Am.*, 390 U.S. 254 (1968) ...................... 12, 28

*Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217 (2d Cir. 2008) ..... 17

*Sanitary Truck Drivers & Helpers Loc. 350, Int'l Bhd. of Teamsters v. NLRB*, 45 F.4th 38 (D.C. Cir. 2022) ................................. 2, 4, 11, 14, 21

*Schmidt v. Burlington N. & Santa Fe Ry. Co.*, 605 F.3d 686 (9th Cir. 2014) ...................................................................................... 18

*Slayman v. FedEx Ground Package Sys., Inc.*,765 F.3d 1033 (9th Cir. 2014) ...................................................................................... 18

**Statutes**

29 U.S.C. § 151 ........................................................................ 24

29 U.S.C. § 152(2) ........................................................................... 19

**Other Authorities**

85 Fed. Reg. 11185 ........................................................................ 11

85 Fed. Reg. 11186 .................................................................... 8, 10

85 Fed. Reg. 11192 .................................................................. 22, 24

85 Fed. Reg. 11209 ........................................................................ 27

85 Fed. Reg. 11224 .......................................................................... 4

**Treatises**

Restatement (Second) Agency § 220(2) .......................................... 12

Restatement (Second) of Agency § 2(2) .......................................... 14

Restatement (Second) of Agency § 220 cmt. d ............................... 20

**Regulations**

29 C.F.R. § 103.40(a) ........................................................ 3, 5, 6, 7, 8

29 C.F.R. § 103.40(b) ....................................................................... 6

29 C.F.R. § 103.40(d) ....................................................................... 5

## INTEREST OF AMICUS CURIAE

The American Federation of Labor and Congress of Industrial Organizations (AFL-CIO), the nation's labor federation, consists of 63 labor unions that represent 15 million workers. Many of these unions regularly represent and seek to represent workers who are jointly employed in a wide range of industries. The AFL-CIO then has an extremely strong interest in the standard the National Labor Relations Board applies to determine whether an employer is a joint employer for purposes of the National Labor Relations Act.

## INTRODUCTION AND SUMMARY OF ARGUMENT

In *Browning-Ferris Industries of California, Inc. d/b/a BFI Newby Island Recyclery*, 362 NLRB 1599 (2015) ("*BFI*"), the NLRB restated its standard for determining whether two or more employers jointly employ a group of workers. In its decision, the Board "ruled that it would consider a putative joint employer's reserved right to control the workers at issue, as well as any indirect control exercised over the workers, as among a number of factors relevant to determining joint-employer status." *Browning-Ferris Indus. of California, Inc. v. NLRB*, 911 F.3d 1195, 1199 (D.C. Cir. 2018) ("*Browning-Ferris*"). Reviewing

that decision, this Court first held that "the [NLRA's] test for joint-employer status is determined by the common law of agency." *Id*. at 1206. It then held "that the right-to-control element of the Board's joint-employer standard has deep roots in the common law" and that the "common law also permits consideration of those forms of indirect control that play a relevant part in determining the essential terms and conditions of employment." *Id*. at 1199-1200. Ultimately, the Court "affirm[ed] the Board's articulation of the joint-employer test as including consideration of both an employer's reserved right to control and its indirect control over employees' terms and conditions of employment." *Id*. at 1200. This Court later explained that "[i]n our [*Browning-Ferris*] decision, we took great pains to inform the Board that the failure to consider reserved or indirect control is inconsistent with the common law of agency." *Sanitary Truck Drivers & Helpers Loc. 350, Int'l Bhd. of Teamsters v. NLRB*, 45 F.4th 38, 47 (D.C. Cir. 2022). Because the common law doesn't allow for ignoring reserved or indirect control, this Court thought it "dubious" that the Board's pre-*BFI* "straitened" standard "fell within the boundaries of the common law as applied in the particular context of the Act." *Id*. (cleaned up).

Accordingly, *Browning-Ferris* and *Sanitary Truck Drivers* foreclose a joint-employer standard—such as the pre-*BFI* standard—that fails to properly consider reserved and indirect control.

Yet, in 2020, the Board promulgated a joint-employer rule that does exactly what *Browning-Ferris* and *Sanitary Truck Drivers* forecloses. Under this standard, an employer may be a joint employer only if it "possess[es] and exercise[s] [] substantial direct and immediate control over one or more essential terms or conditions of their employment[.]" 29 C.F.R. § 103.40(a).[1] Reserved or indirect control is probative, but "only to the extent it supplements and reinforces evidence of the entity's possession or exercise of direct and immediate control over a particular essential term and condition of employment." *Id.* As explained below, this standard essentially eliminates both reserved and indirect control from the joint-employer analysis, just as the pre-*BFI* standard did. Indeed, in proposing its rule, the Board stated that the joint-employer rule was intended to return to the pre-

---

[1] The rule currently found at 29 C.F.R. § 103.40 reflects a rule the Board promulgated in 2023 that was later vacated. *Amicus* refers these provisions as reflected in the Board's final rule found at 85 Fed. Reg. 11235-36.

*BFI* standard, a standard this Court questioned how the Board "could lawfully apply" when this Court said it "was out of step with the common law." *Sanitary Truck Drivers*, 45 F.4th at 47; *see* 85 Fed. Reg. 11224 ("The Board intends in this final rule to return, with clarifying guidance, to the carefully balanced law as it existed before the Board's departure in [*BFI*]."). Because it is inconsistent with the common law, this rule must be vacated.

But not only is it inconsistent with the common law, the rule is arbitrary and capricious because it fails provide meaningful guidance to the regulated community. The rule requires employers, unions, and employees to strictly categorize different forms of control to determine whether or not any particular form will be considered within the joint-employer analysis. But the rule provides no guidance for engaging in this exercise. Parties that fall under the NLRA are left to guess at how different forms of control will be categorized, and thereby considered relevant or irrelevant to the analysis. A rule that sows confusion can't possibly be considered reasonable and reasoned, and so violates the Administrative Procedure Act.

This Court should vacate the Board's joint-employer rule.

# ARGUMENT

## I. The Board's Joint-Employer Rule is Inconsistent with the Common Law and the Policies of the Act

The Board's regulation at 29 C.F.R. § 103.40 sets forth an improperly narrow joint-employer standard. Under the rule, the Board will find joint employment where "two employers share or codetermine [a group of] employees' essential terms and conditions of employment." 29 C.F.R. § 103.40(a). To this general qualifying condition, the rule applies a number of limits. *First*, to be found to share or codetermine the essential terms and conditions of employment, an employer must "possess and exercise [] substantial direct and immediate control over one or more essential terms or conditions of their employment[.]" *Id*. Substantial direct and immediate control does not include control "exercised on a sporadic, isolated, or de minimis basis." 29 C.F.R. § 103.40(d). *Second*, evidence of indirect control, reserved but unexercised control, or control over mandatory subjects of bargaining other than the delineated essential terms and conditions "is probative of joint-employer status, but only to the extent it supplements and reinforces evidence of the entity's possession or exercise of direct and immediate control over a particular essential term and condition of

employment." 29 CFR 103.40(a). *Third*, the rule limits the essential terms and conditions of employment to "wages, benefits, hours of work, hiring, discharge, discipline, supervision, and direction." 29 C.F.R. § 103.40(b). *Fourth*, the rule narrowly defines what constitutes direct and immediate control over the essential terms; for instance, it disregards evidence of supervision that is "limited and routine and consist[s] primarily of telling another employer's employees what work to perform, or where and when to perform the work, but not how to perform it." 29 C.F.R. § 103.40(c) & (c)(7).

These limitations to the general qualifying condition are inconsistent with the common law and undermine—rather than effectuate—the policies of the Act. Accordingly, this Court should vacate the rule.

### A. The Board's 2020 Rule Improperly Eliminates Consideration of Reserved and Indirect Control, and Control over Mandatory but Non-"Essential" Terms, from the Joint Employer Analysis

The Board's joint-employer rule improperly focuses exclusively on direct and immediate control. A party alleging joint employment must initially prove the putative joint employer "possess[es] *and exercise[s] substantial direct and immediate* control over one or more essential

6

terms or conditions[.]"  29 C.F.R. § 103.40(a) (emphasis added).  This focus on substantial direct and immediate control renders other forms of control—specifically, reserved and indirect control and control over mandatory subjects of bargaining that are not on the exhaustive list of essential terms—irrelevant.  The rule confirms the irrelevance of these forms of control by giving them probative value "*only to the extent*" they "supplement[] *and* reinforce[] evidence of the [putative joint employer's] possession or exercise of direct and immediate control over *a particular* essential term and condition of employment."  *Id.* (emphasis added).  In other words, evidence of reserved or indirect control, or control over non-"essential" terms, is probative only to supplement evidence of direct and immediate control over a particular term of employment.  Accordingly, the evidence of additional forms of control is totally dependent on the existence of direct and immediate control over a particular term of employment, and only as further evidence of the existence of direct and immediate control over that term of employment.

This framework of superior and subordinate forms of common law control—wholly unique in American jurisprudence—renders the subordinate forms of control irrelevant in most cases, and in all cases

inappropriately undervalues their significance. On its face, the rule makes significant categories of reserved and indirect control, and control over non-"essential" terms, entirely irrelevant where evidence of those forms of control does not supplement and reinforce evidence of direct and immediate control over a particular term of employment. A putative joint employer could then, for instance, contractually retain an unlimited amount of control over various terms and conditions (wages, for example)—but not yet exercise that control at the time of hearing before the NLRB—and that evidence would be entirely irrelevant because it does not supplement and reinforce any evidence of direct and immediate control. Indeed, the Board said as much in the preamble to its final rule, where it explained that "the fact that an entity has a contractually reserved right to control an essential term or condition is probative of whether it possesses control over that term." 85 Fed. Reg. 11186. Probative value as to possession of control is meaningless, as an entity must "possess *and exercise* substantial direct and immediate control" to be found a joint employer. 29 C.F.R. § 103.40(a) (emphasis added).

Even when evidence of reserved and indirect control, as well as control over non-"essential" terms, is cognizable, the Board's current rule gives those forms of control no weight independent of direct and immediate control. Those subordinate forms of control are then never probative of joint-employer status; evidence that they exist is only cognizable as additional proof of direct and immediate control over essential terms of employment. That is, the Board's current joint-employer standard establishes an evidentiary rule that allows consideration of the subordinate forms of control solely to support a finding that a putative joint employer possesses and exercises direct and immediate control over a particular term of employment. But only direct and immediate control over essential terms of employment is considered when finding a joint employer.

If anyone missed that the subordinate forms of control are irrelevant to a finding of joint employment, the Board hammered home the point in its preamble to the final rule, where it stated that these forms of control are "not . . . probative of whether [an] entity 'meaningfully affects matters relating to the employment relationship.'" Under the final rule, a putative joint employer reaches that threshold

only through possession and exercise of substantial direct and immediate control over one or more essential terms and conditions of employment." 85 Fed. Reg. 11186.

Finally, as a practical matter, it is entirely unlikely that evidence of reserved and indirect control or control over a non-essential term of employment will ever factor into a joint-employer analysis under the current rule. Evidence that a putative joint employer exercises substantial direct control over a particular essential term of employment will likely always be sufficient to find that the employer exercises substantial direct and immediate control over that essential term. That the joint employer also possesses contractually reserved control over that particular essential term will rarely, if ever, be necessary to the legal conclusion. Moreover, it is unclear how a putative joint employer could exercise both direct and immediate control and indirect control over the same essential term of employment. But even if it could, the evidence of indirect control will also rarely, if ever, be material to the determination of whether the putative joint employer possesses and exercises direct and immediate control over the essential term.

Accordingly, the Board's current joint-employer rule eliminates consideration of indirect and reserved control, as well as control over mandatory subjects that are not one of the delineated essential terms. For the reasons explained below, this is inconsistent with the common law, and warrants vacating the rule.

## B. The Board's Treatment of Reserved and Indirect Control, and Control over Mandatory Subjects of Bargaining Other Than the Delineated Essential Terms, has no Basis in the Common Law of Agency

As discussed above, in *Browning-Ferris*, this Court held that "the National Labor Relations Act's test for joint-employer status is determined by the common law of agency." 911 F.3d at 1206; *see id*. at 1208 ("The Board's [joint-employer] rulemaking … must color within the common-law lines identified by the judiciary."). In *Sanitary Truck Drivers*, the Court affirmed that holding. 45 F.4th at 47 (explaining that, in its earlier decision, the court had "made clear that the Board's joint-employer test must 'color within the common-law lines identified by the judiciary'"). The Board recognized the requirement that its joint-employer test be consistent with the common law when it adopted the joint-employer rule. *See* 85 Fed. Reg. 11185 ("Whether proceeding by adjudication or rulemaking, [] the Board 'must color within the

common-law lines identified by the judiciary.'").  However, by eliminating reserved and indirect control and control over mandatory but non-essential terms of employment from the joint-employer calculus, the rule the Board adopted failed to deliver a test that was consistent with the common law.

*First*, in determining whether an employment relationship exists under the common law, the Supreme Court has instructed that "all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.  What is important is that the total factual context is assessed."  *NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 258 (1968) (emphasis added).   Under the common law, the test has always been a multi-factor one that considers *all* evidence of control over *all* terms and conditions of employment.  *See* Restatement (Second) Agency § 220(2) ("In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, *among others*, are considered." (emphasis added)).  Accordingly, the rule's effective elimination of indirect and reserved control, as well as control over mandatory subjects other than the delineated essential terms, does not

comport with the common-law requirement that the Board evaluate all evidence of control.

*Second*, the common law of agency requires that the Board consider all evidence of reserved control over terms and conditions of employment in determining joint-employer status, and not limit its examination to whether reserved control supplements and reinforces a putative joint employer's possession and exercise of direct and immediate control over a particular term. In *Browning-Ferris*, this Court held that reserved authority, or the right to control workers and the terms and conditions of their employment, is a relevant factor in the joint employer analysis—indeed, a primary and not a secondary factor. *See* 911 F.3d at 1209-13.

Relying on the common law of agency, and its own precedent, the *Browning-Ferris* Court emphasized the longstanding and widespread acceptance of an employer's reserved right to control as a relevant factor for determining joint-employer status. *Id.* Consideration of the "reserved but unexercised right to control" in the joint employer analysis is "extensive[ly] support[ed] in the common law of agency." *Id.* at 1209. This derives from the common law understanding of the

master-servant relationship, which considers "retained but unexercised control" a key factor. *Id.* at 1210. For example, the Court cited *Chicago, Rock Island & Pacific Ry. Co. v. Bond*, 240 U.S. 449, 456 (1916), where the Supreme Court held that a worker was not an employee because the company did not "retain control" or "retain the right" to direct the operations or goals of the business. *Id.* The *Browning-Ferris* Court also observed that the precedent on the inclusion of the right to control in a joint-employer analysis is "so clear" that even the employer Browning-Ferris admitted it was a relevant factor. *Id.* at 1211. Additionally, the Court cited to the Restatement (Second) of Agency's identification of the right to control as a "principal guidepost" for deciding if an entity is an employer. *Id.* at 1211 (citing *Clackamas Gastroenterology Associates, P. C. v. Wells*, 538 U.S. 440, 448 (2003) (quoting Restatement (Second) of Agency § 2(2)); *see also Sanitary Truck Drivers*, 45 F.4th at 46 ("the common-law rule is that unexercised control bears on employer status" (cleaned up)). Indeed, this Court described consideration of the right to control as "run[ning] like a *leitmotif*" through the Restatement (Second) of Agency and the common law more broadly. *Id.* at 1211.

Not only did this Court determine that reserved control is relevant to the joint-employer analysis, but it further made clear that reserved control cannot be relegated to a subordinate role, much less made virtually irrelevant. The Court held, "Whether [two entities are] joint employers under the National Labor Relations Act depends upon the amount of actual *and potential control* that the putative joint employer ha[s] over the [] employees." *Browning-Ferris*, 911 F.3d at 1209 (cleaned up; emphasis added) (quoting *Int'l Chemical Workers Union Local 483 v. NLRB*, 561 F.2d 253, 255 (D.C. Cir. 1977)). "[I]t is not the manner in which the alleged master actually exercised his authority to control and direct the action of the servant which controls, but it is his right to do so that is important." *Id.* at 1212 (quoting *Dovell v. Arundel Supply Corp.*, 361 F.2d 543, 544 (D.C. Cir. 1966)). The Court observed that an employee determination "turn[s] on the [presence or] absence of authority in the principal to control." *Id.* (quoting *Logue v. United States*, 412 U.S. 521, 527 (1973)).

Indeed, the Court suggested that if there is any hierarchy of evidence, it is evidence of reserved control that is primary. The Court quoted its prior decision in *Dovell*, 361 F.2d at 544:

The *decisive test* in determining whether the relation of master and servant exists is whether the employer has the right to control and direct the servant in the performance of his work and in the manner in which the work is to be done. It will be noted from the above, it is not the manner in which the alleged master actually exercised his authority to control and direct the action of the servant which controls, but it is his right to do so that is important.

*Browning-Ferris*, 911 F.3d at 1212 (emphasis added). And similarly from *Grace v. Magruder*, 148 F.2d 679, 681 (D.C. Cir. 1945): "The *vital element* which negatives such independence, in the relation between employer and employee, is the right to control the employee." *Browning-Ferris*, 911 F.3d at 1212 (emphasis added).

If these quotations were not enough, the *Browning-Ferris* Court expressly rejected the suggestion that reserved authority is less significant than exercised authority. Browning-Ferris argued that exercised authority is the "most important" part of an employer-or-independent-contractor analysis and that the court should "import the same focus" for the joint-employer determination. *Id.* at 1212. But the Court made absolutely clear that it was rejecting that proposed diminution of the importance of reserved control when it stated: "Both steps of that argument fail." *Id.* Despite all this, the Board still

adopted a rule that emphatically does not permit consideration of reserved control as a "principal guidepost."[2]

---

[2] This Court is no outlier among the courts of appeals in holding that reserved control is probative of employer status and cannot be ignored. To the contrary, the Supreme Court and other courts of appeals agree that, under the common law, they must consider not only evidence of the actual exercise of control but also evidence of a right to control. *See, e.g.*, *Nat'l Mutual Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992) ("In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's *right to control* the manner and means by which the product is accomplished" (cleaned up; emphasis added); *NLRB v. Maine Caterers, Inc.*, 654 F.2d 131, 132 (1st Cir. 1981) (Breyer, J.) (enforcing Board order where "the Board, in applying the common law test of independence, has looked to *the right of control*: whether the putative employer has the right to control not only the results sought but also the means by which those results are achieved" (cleaned up; emphasis added)), *cert. denied*, 455 U.S. 940 (1982); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 228 (2d Cir. 2008) ("The most important factor in determining the existence of an employment relationship [at common law] is . . . control *or right of control* by the employer" (cleaned up; emphasis added)); *Allbritton Commc'ns Co.* v. *NLRB,* 766 F.2d 812, 819 (3d Cir. 1985) (finding fact that the user employer "retained the right to require [supplier employer] to hire additional employees, and also retained the right to demand that [supplier] discharge any driver, supervisor or assistant foreman who did not meet the [user's] approval" as supportive of Board's joint employer finding); *ARA Leisure Servs., Inc. v. NLRB*, 782 F.2d 456, 459-60 (4th Cir. 1986) (explaining that it is "the right to control, rather than the actual exercise of control, that is significant" in determining whether a worker is an employee or independent contractor under common law agency principles); *N. Am. Soccer League v. NLRB*, 613 F.2d 1379, 1382 (5th Cir. 1980) ("The existence of a joint employer relationship depends on the control which one employer exercises, or potentially exercises, over the labor relations policy of the other."); *Carrier Corp. v. NLRB*, 768 F.2d 778, 781 (6th Cir. 1985)

*Third*, just as with reserved control, the common law of agency requires that the Board consider all evidence of indirect control over terms and conditions of employment in determining joint-employer status, and not ignore indicia of indirect control that does not supplement or reinforce evidence of direct and immediate control and effectively ignore evidence of indirect control even if it does so.  In

---

(citing, among factors that "particularly support[ed]" a joint employer finding, the fact that the employee leasing agreement gave the user employer "authority to reject any driver that did not meet its standards and [to] direct [the supplier employer] to remove any driver whose conduct was not in [the user employer's] best interests"); *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 988–89 (9th Cir. 2014) (noting that determinations of employment status under California law are governed by a "right-to-control test," which requires courts to weigh a number of factors to determine "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired"); *Slayman v. FedEx Ground Package Sys., Inc.*,765 F.3d 1033, 1042 (9th Cir. 2014) ("What matters is what the contract, in actual effect, allows or requires."); *Schmidt v. Burlington N. & Santa Fe Ry. Co.*, 605 F.3d 686, 691 (9th Cir. 2014) ("While we agree the evidence [the putative employer] exercised actual day-to-day control is scant, the district court did not consider whether [putative employer] had the *right to control* [plaintiff's] daily work.  On this point, we conclude [plaintiff] presented adequate evidence for a rational jury to find [putative employer] could control critical aspects of his daily work."); *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 898 F.3d 1110, 1121 (11th Cir. 2018) (emphasizing that under the common law, "it is the *right* to control, not the actual exercise of control, that is significant" (emphasis in original) (quoting *NLRB v. Associated Diamond Cabs, Inc.*, 702 F.2d 912, 920 (11th Cir. 1983))).

*Browning-Ferris*, this Court held that "the common-law inquiry is not woodenly confined to indicia of direct and immediate control; an employer's indirect control over employees can be a relevant consideration." 911 F.3d at 1209. Indeed, "[t]raditional common-law principles of agency do not require that control be exercised directly and immediately to be relevant to the joint-employer inquiry." *Id.* at 1216 (cleaned up). As the court pointed out, the Act "itself expressly recognizes that agents acting 'indirectly' on behalf of an employer could also count as employers." *Id.* (quoting 29 U.S.C. § 152(2) ("employer" "includes any person acting as an agent of an employer, directly or indirectly")). "The Act thus textually indicates that the statute looks to *all probative* indicia of employer status, whether exercised directly or indirectly." *Id.* (cleaned up; emphasis added). The Court put a final nail in the coffin of any argument that direct control can be treated differently from indirect control when it said a "rigid distinction between direct and indirect control has no anchor in the common law." *Id.*; *see also id.* at 1216-17 ("common-law decisions have repeatedly recognized that indirect control over matters commonly determined by an employer can, at a minimum, be weighted in determining one's

status as an employer or joint employer, especially insofar as indirect control means control exercised through an intermediary" (cleaned up)).[3]  Yet, just like with reserved control, the Board's rule ignores indirect control.

At bottom, this Court in *Sanitary Truck Drivers* explained that "the common law [does] not countenance ignoring reserved and indirect control in assessing joint-employer status[,]" and ignoring such control does not "color within the common-law lines identified by the judiciary."

---

[3] This Court is not alone in finding indirect control relevant to joint employment; other courts of appeals and lower courts have considered different forms of indirect control in determining whether a joint employer relationship existed.  In *NLRB v. Browning-Ferris Industries, Inc.*, for example, the Third Circuit considered it relevant that "BFI established the work hours of the drivers, determining when the two shifts it established would start and end," even though the drivers' brokers "schedule[d] the drivers for particular shifts."  691 F.2d 1117, 1120, 1124–25 (3d Cir. 1982); *see also Indus. Personnel Corp. v. NLRB*, 657 F.2d 226, 229 (8th Cir. 1981) ("While [supplier of drivers] sets the drivers' wages, [user-manufacturer] reimburses [supplier] and presumably has some control over those wages since it can rescind the . . . contract on thirty days' notice.").  In *International Union v. Clark*, the district court found it relevant that the user employer could "alter the daily assignments of [employees], requiring the contractors to shift personnel from one duty station to another or assign them special projects," even though "[t]he contractors . . . decide[d] *which* individual [employee] w[ould], for example, perform overtime or shift duty stations."  No. 02-1484, 2006 WL 2598046, at *7 & n.10 (D.D.C. 2006) (emphasis in original).  The Restatement confirms that the control may be "very attenuated."  Restatement (Second) of Agency § 220 cmt. d.

45 F.4th at 46-47 (cleaned up).  Indeed, it found "dubious" the Board's "insist[ence] that the D.C. Circuit . . . agreed [only] that indirect and reserved control can be relevant considerations in the common law, not that they must be given weight independent of direct-and-immediate control" and its claim that its pre-*BFI* standard—which the Board claimed to be reinstating with its joint-employer rule—"fell within the boundaries of the common law as applied in the particular context of the Act." *Sanitary Truck Drivers*, 45 F.4th at 47 (cleaned up) (citing *Browning-Ferris Industries of Cal., Inc.*, 370 NLRB No. 86, sl. op. 1 n.2 (2021)).  Instead, the Court explained, "In our 2018 decision, we took great pains to inform the Board that the failure to consider reserved or indirect control is inconsistent with the common law of agency."  *Id.* The Court had faulted the pre-*BFI* standard for "essentially ignor[ing] both indirect and reserved control," and it ultimately remanded the matter to the Board, in part, because the Board failed "to explain . . . how it could lawfully apply a standard that we have said was out of step with the common law." *Id.*

Because the Board's joint-employer rule functions the same as its pre-*BFI* rule—essentially ignoring relevant probative evidence such as

reserved and indirect control—and the Board offers no explanation for how, under the language of the Act, it can lawfully apply a standard that is out of step with the common law, *Browning-Ferris* and *Sanitary Truck Drivers* mandate that this Court vacate the Board's joint-employer rule.

### C. The Board's Current Joint-Employer Rule is Not Justified by the Policies of the Act, and Indeed, it Undermines those Policies

Even if the Board could adopt a joint-employer standard that fails to color within the lines of the common law, here it provides no reasonable explanation for why.  In the preamble to the rule, the Board asserted that its relegation of reserved and indirect control, and control over non-essential mandatory subjects of bargaining, furthers the policies of the Act.  But the Board did so in wholly conclusory fashion.  For instance, it claimed that the rule "promotes national labor policy by appropriately imposing bargaining obligations solely on entities that have actually exercised substantial direct and immediate control over essential terms and conditions of employment."  85 Fed. Reg. 11192. But the Board provides no explanation as to why requiring bargaining solely with those entities that have actually exercised substantial direct

and immediate control over essential terms furthers national labor policy. Indeed, it is difficult to comprehend how a rule that limits the ability of employees to bargain with the employers that possess or exercise control over mandatory subjects of bargaining could possibly promote the policies of the Act. It is equally difficult to understand how a rule that categorically imposes no duty to bargain on an entity that has authority to control essential terms of employment until that entity actually exercises control could possibly promote the policies of an Act— policies intended to promote bargaining and prevent unilateral changes. *See Auciello Iron Works, Inc. v. NLRB*, 517 U.S. 781, 785 (1996) ("the object of the [NLRA] is industrial peace and stability, fostered by collective-bargaining agreements providing for the orderly resolution of labor disputes between workers and employees").

Similarly, the Board claimed that the rule furthers the policies of the Act "by requiring only those entities to come to the bargaining table that have sufficient control over essential terms and conditions of employment to warrant a finding that they meaningfully affect matters relating to the employment relationship, and that direct and immediate control over at least one essential term is necessary to warrant such a

finding." 85 Fed. Reg. 11192. But again, the Board offers no explanation of why direct and immediate control is the only type of control that warrants a finding that a putative joint employer meaningfully affects matters related to the employment relationship. It is not difficult to imagine circumstances where reserved control and indirect control—especially where exercised through an intermediary— would meaningfully affect matters related to the employment relationship. Accordingly, the Board fails to justify its *sui generis* framework of superior and subordinate forms of common-law control based on the policies underlying the Act.

In reality, the Board's joint-employer rule frustrates—rather than effectuates—the policies of the Act. The Act itself declares that the policy of the United States is to "encourag[e] the practice and procedure of collective bargaining and [to] protect[] the exercise of workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating terms and conditions of their employment[.]" 29 U.S.C. § 151. The Supreme Court explained that the "theory of the [A]ct is that free opportunity for negotiation with accredited representatives of

employees is likely to promote industrial peace and may bring about the adjustment and agreements which the [A]ct in itself does not attempt to compel." *NLRB & Jones & Laughlin Steel Corp.*, 301 U.S. 1, 45 (1937). By purposely narrowing the circumstances in which the Board will find joint employment, the joint-employer rule artificially limits the Act's reach and denies employees the "free opportunity for negotiation" with the entities that possess and/or exercise control over their terms of employment. A rule at odds with the statutory policy cannot stand. *See Community of Creative Non-Violence v. Reid*, 490 U.S. 730, 750 (1989) (rejecting proposed actual control test for employee status because it would frustrate Congress's goal in copyright law).

## II. The Joint-Employer Rule is Arbitrary and Capricious Because its Framework Requires the Board and the Regulated Community to Categorize a Putative Joint Employer's Various Forms of Control, But the Rule Offers No Guidance How to Do So

The APA "requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). "[R]easonable regulation ordinarily requires paying attention to the advantages and the disadvantages of agency decisions." *Michigan v. EPA*, 576 U.S. 743, 753 (2015). The Board's rule fails this

standard because it does not articulate a comprehensible standard with meaningful guidance to regulated parties.

The Board's joint-employer rule requires a strict taxonomy of direct and immediate, reserved, and indirect control in order to determine which forms of control will be considered, and to what extent, in any given factual scenario. Into what categorical bucket—direct and immediate, reserved, indirect—specific evidence of control is placed determines whether that evidence of control will be considered at all or ignored in its entirety. But many specific forms of control defy easy categorization. For instance, is a contractual provision that sets the start and end times for supplied workers' shifts, with a right—as yet, unexercised—for the user employer to change those times at will even during a shift, a form of reserved but unexercised control, direct and immediate control, or both? If a user employer recommends the discharge of a supplied employee for alleged misconduct, and the supplier does discharge the employee without conducting its own investigation, is that evidence of indirect control or direct and immediate control? What type of control is pervasive electronic monitoring by a user employer that dictates the speed at which supplied

employees work?  Classifying these indicia of control as direct and immediate may lead to a finding of joint employment; classifying them as reserved or indirect control may lead to them being entirely disregarded.

The regulated community is left to struggle with this sorting task without any guidance from the Board.  Indeed, the Board itself has been inconsistent in how it categorizes certain forms of control.  For instance, in *BFI*, the Board categorized control exercised through an intermediary as indirect control.  362 NLRB at 1600.  But in the preamble to the rule under review, the Board suggested control exercised through an intermediary is direct and immediate control.  *See* 85 Fed. Reg. 11209 ("Direct and immediate control exercised through an intermediary remains direct and immediate.").  Accordingly, a confused public has no compass to guide its analysis of whether various forms of control in the modern workplace are direct and immediate, reserved, or indirect.

But the true failure of reasoned decisionmaking is less in the Board's failure to provide guidance as to which forms of control fall where in its analytical hierarchy, but its choice to adopt a hierarchy in

the first place. The difficulty in categorizing various forms of control highlights the irrationality of applying a hierarchy to evidence evaluated in a common law inquiry. The joint-employment analysis is inherently a fact-specific, totality of the circumstances inquiry; it simply makes no sense to attempt to create superior and inferior forms of evidence to plug into this inquiry. This is why, as mentioned above, the Supreme Court instructed that a common law employment analysis requires that "all the incidents of the relationship [] be assessed and weighed with no one factor being decisive. What is important is that the total factual context is assessed." *United Ins. Co.*, 309 U.S. at 258.

The rule is then arbitrary and capricious, and must be vacated.

## CONCLUSION

For the reasons stated above, *amicus* AFL-CIO urges this Court to vacate the Board's joint-employer rule.

Respectfully submitted,

Dated: October 3, 2025

/s/ Maneesh Sharma
Maneesh Sharma

MATTHEW GINSBURG
MANEESH SHARMA
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, DC 20006
(202) 637-5336
msharma@aflcio.org

*Counsel for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 5,879 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

/s/ Maneesh Sharma

*Counsel for Amicus Curiae*

Date: October 3, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, October 3, 2025, I electronically filed the foregoing *Amicus Curiae* Brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system.

I further certify that the foregoing document was served on all parties or their counsel of record through the appellate CM/ECF system, as they are registered users.

/s/ Maneesh Sharma

*Counsel for Amicus Curiae*