ORAL ARGUMENT NOT YET SCHEDULED

**Case No. 25-1119**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

SERVICE EMPLOYEES INTERNATIONAL UNION,
*Petitioner*,
*v.*

NATIONAL LABOR RELATIONS BOARD,
*Respondent.*

**On Petition for Review of a Final Rule of the National Labor Relations Board**

# AMICUS CURIAE BRIEF OF THE NATIONAL RIGHT TO WORK LEGAL DEFENSE FOUNDATION, INC. IN SUPPORT OF RESPONDENT AND DENIAL OF THE PETITION

William L. Messenger
Alyssa K. Hazelwood
c/o National Right to Work Legal
Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
(703) 321-8510
wlm@nrtw.org
akh@nrtw.org

March 9, 2026

*Counsel for Amicus Curiae*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for the National Right to Work Legal Defense Foundation, Inc. ("Foundation") certifies as follows:

**(A) Parties and Amicus:** Except for the Foundation, all parties, intervenors and amici appearing in this Court are listed in the Petitioner's and Respondent's Briefs.

**(B) Rulings Under Review:** References to the rule at issue appear in the Petitioner's and Respondent's Briefs.

**(C) Related Cases:** This Rule has not previously been reviewed by this Court. Counsel is unaware of any related cases other than those that appear listed in the Petitioner's and Respondent's Briefs.

/

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, counsel states the National Right to Work Legal Defense Foundation, Inc. is a non-profit corporation that has no parent corporation. It issues no stock, and therefore no publicly held corporation owns 10% or more of its stock.

The Foundation is a nonprofit, charitable organization providing free legal aid to employees whose civil rights may have been violated by abuses of compulsory unionism. The Foundation supports litigation to enforce and expand employees' legal rights and protections against forced unionism, and conducts a program to educate and inform the public about such issues.

/s/ William L. Messenger
William L. Messenger
c/o National Right to Work Legal
Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
(703) 321-8510
wlm@nrtw.org

Date: March 9, 2026

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .......... i

CORPORATE DISCLOSURE STATEMENT .......... ii

TABLE OF AUTHORITIES .......... iv

STATUTES AND REGULATIONS .......... vi

GLOSSARY OF ABBREVIATIONS .......... vii

STATEMENT OF IDENTITY, INTEREST IN CASE AND SOURCE OF AUTHORITY TO FILE .......... 1

SUMMARY OF ARGUMENT .......... 2

A. SEIU Has Failed to Prove Standing .......... 3

B. If the Court Reaches the Merits, It Should Reject SEIU's Expansive Theory as Inconsistent with the Common Law .......... 13

CONCLUSION .......... 19

CERTIFICATE OF COMPLIANCE .......... 21

CERTIFICATE OF SERVICE .......... 22

## TABLE OF AUTHORITIES

***Case*** ***Pages***

*AFGE v. FLRA*,
25 F.4th 1 (D.C. Cir. 2022) ............................................... 11, 12, 13

*Browning-Ferris Indus. of Cal. v. NLRB*,
911 F.3d 1195 (D.C. Cir. 2018) ..................................................... 17

*Chamber of Comm. of U.S. v. NLRB*,
723 F. Supp. 3d 498 (E.D. Tex. 2024) ........................... 3, 14, 18, 19

*Colo. Fire Sprinkler, Inc. v. NLRB*,
891 F.3d 1031 (D.C. Cir. 2018) ....................................................... 1

*Cortes v. NLRB*,
145 F.4th 57 (D.C. Cir. 2025) .......................................................... 1

*Harris v. Quinn*,
573 U.S. 616 (2014) .......................................................................... 1

*Int'l Bhd. of Teamsters v. TSA*,
429 F.3d 1130 (D.C. Cir. 2005)........................................ 4, 9, 11, 13

*Janus v. AFSCME, Council 31*,
585 U.S. 878 (2018) .......................................................................... 1

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................................ 4, 5, 9

*McLamb v. NLRB*,
141 F.4th 1308 (D.C. Cir. 2025) ...................................................... 1

*NLRB v. Denver Bldj. & Constr. Trades Council*,
341 U.S. 675 (1951) ........................................................................ 19

*NTEU v. Chertoff*,
452 F.3d 839 (D.C. Cir. 2006) .......................................... 11, 12, 13

## TABLE OF AUTHORITIES (continued)

***Case*** **Pages**

*SEIU Local 32BJ,*
NLRB Case No. 01-CB-107860 (withdrawn Oct. 22, 2013)............ 8

*SEIU Local 32B-32J (Collins Bldg. Servs., Inc.),*
NLRB No. 22-CB-227879 (withdrawn Jan. 15, 2019) ..................... 8

*Sierra Club v. EPA,*
292 F.3d 895 (D.C. Cir. 2002)............................................... 4, 5, 11

*Summers v. Earth Island Inst.,*
555 U.S. 488 (2009) ......................................................... 6, 10, 11

*Twin Rivers Paper Co. v. SEC,*
934 F.3d 607 (D.C. Cir. 2019)....................................... 4, 5, 6, 9, 11

**Administrative and Executive Materials**

Joint Employer Status Under the National Labor Relations Act,
85 Fed. Reg. 11184 (Feb. 26, 2020) .................................................. 2

Standard for Determining Joint Employer Status,
88 Fed Reg. 74018 (Oct. 26, 2023) ................................................. 18

**Rules, Statutes, and Constitutions**

29 U.S.C. § 152(2) ............................................................................ 2, 14

Fed. R. App. P. 26.1 ................................................................................ ii
Fed. R. App. P. 29(a)................................................................................ 1
D.C. Cir. R 26.1 ....................................................................................... ii
D.C. Cir. R. 28(a)(7) ................................................................................ 3
D.C. Cir. R. 29 ......................................................................................... 1

## STATUTES AND REGULATIONS

The applicable statutes and regulations are contained in the addendums to the Petitioner's Brief and/or Respondent's Brief.

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| Federal Labor Relations Authority | FLRA |
| Joint Employer Status Under the National Labor Relations Act, 85 Fed. Reg. 11184 (Feb. 26, 2020) | Joint Employer Rule or Rule |
| National Labor Relations Act | Act or NLRA |
| National Labor Relations Board | Board or NLRB |
| Service Employees International Union | SEIU |

## STATEMENT OF IDENTITY, INTEREST IN CASE AND SOURCE OF AUTHORITY TO FILE

Since 1968, the National Right to Work Legal Defense Foundation, Inc., has been the nation's leading advocate for employee freedom to choose whether to associate with unions. To this end, Foundation staff attorneys have represented individual employees before the Supreme Court in groundbreaking free speech and association cases. *E.g.*, *Janus v. AFSCME*, *Council 31*, 585 U.S. 878 (2018); *Harris v. Quinn*, 573 U.S. 616 (2014). Foundation attorneys have also represented employees and filed amicus briefs in cases before this Court that implicated employee freedom of choice. *E.g.*, *Cortes v. NLRB*, 145 F.4th 57 (D.C. Cir. 2025); *McLamb v. NLRB*, 141 F.4th 1308 (D.C. Cir. 2025); *Colo. Fire Sprinkler, Inc. v. NLRB*, 891 F.3d 1031 (D.C. Cir. 2018). The Foundation submits this brief pursuant to Federal Rule of Appellate Procedure 29[1] in support of 29 C.F.R. § 103.40, as promulgated in the Final Rule, Joint Employer

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(2) and Circuit Rule 29(b), the Foundation sought and obtained the consent of all parties to file this brief. The Foundation states, pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), that no party or party's counsel authored this brief in whole or in part or contributed money that was intended to fund preparing or submitting the brief.

Status Under the National Labor Relations Act, 85 Fed. Reg. 11184 (Feb. 26, 2020) (hereafter "Joint Employer Rule" or "Rule").

## SUMMARY OF ARGUMENT

SEIU has failed to meet its burden of proving that it had Article III standing when it filed this petition for review on May 2, 2025. The only "evidence" of standing SEIU points to in its brief are regulatory comments it and an affiliate filed in January or February 2019. SEIU Br. 24–25. These comments do not identify any specific SEIU members actually harmed by the Joint Employer Rule. Even if they did, comments filed in early 2019 cannot possibly prove the Rule was actually harming SEIU members six (6) years later in May 2025.

SEIU's petition should be dismissed for lack of standing. If it is not dismissed, it should be denied on the merits.

SEIU's theory that reserved-but-unexercised authority alone makes an entity a joint employer under common law cannot be reconciled with the fact that such authority is generally insufficient to make an entity a singular "employer" of employees under NLRA Section 2(2), 29 U.S.C. § 152(2). An entity must first be an "employer" of employees to be a joint employer of those employees. And an entity just having latent,

unexercised power to control a term of an individual's vocation does not create an employer-employee relationship in isolation. Rather, it suggests the entity has a business or contracting relationship with the individuals or with their true employer.

SEIU's expansive theory is inconsistent with common law because it would transform a multitude of routine, arms-length business contracts into employment relationships. On these grounds, the district court in *Chamber of Commerce of United States v. NLRB*, 723 F. Supp. 3d 498, 503 (E.D. Tex. 2024) rejected a joint employer standard that made reserved-but-unexercised control a defining element of an employment relationship. The Court should reject SEIU's theory for the same reason.

### A. SEIU Has Failed to Prove Standing.

1. This Court requires, in direct appeals of administrative actions, that the petitioner's opening brief "cite evidence establishing by a 'substantial probability' the claim of standing" and that "[i]f the supporting evidence is not contained in the administrative record, it must be included in an addendum to the brief." Circuit Rule 28(a)(7). The Court takes this requirement seriously because a petitioner in an administrative case

seeks a final judgment on the merits of its claims. *See Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002).

A petitioner cannot establish standing with unproven assertions. *Id.* The Court requires an evidentiary showing akin to that required in a summary judgment motion—the petitioner must "support each element of its claim to standing 'by affidavit or other evidence.'" *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The petitioner must produce this evidence in or with its opening brief or earlier—it cannot produce this evidence in a reply. *Sierra Club*, 292 F.3d at 900; *see also Twin Rivers Paper Co. v. SEC*, 934 F.3d 607, 613 (D.C. Cir. 2019); *Int'l Bhd. of Teamsters v. TSA*, 429 F.3d 1130, 1134–36 (D.C. Cir. 2005).

SEIU argues it has associational standing to pursue this case "on behalf of the hundreds of thousands of members and employees it represents whose bargaining power will be adversely impacted." SEIU Br. at 24. However, on the next page of its brief, SEIU argues the Rule will impair the ability of its "affiliates" to bargain on behalf of members. *Id.* at 25. SEIU is apparently advancing a two-level theory of associational standing—i.e., arguing it has associational standing to sue

on behalf of SEIU affiliates which, in turn, have associational standing to sue on behalf of union members.

To prove associational standing under this novel and attenuated theory, SEIU must cite to evidence in the record, or submit evidence, proving its members have Article III standing. This means evidence proving certain SEIU members are suffering an injury that is: (1) "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) "fairly traceable" to the Joint Employer Rule; and (3) would be redressed by the Rule being vacated. *Lujan*, 504 U.S. at 560–61 (cleaned up). SEIU "cannot rest on 'abstract,' or 'conclusory' assertions of injury, but must point to 'specific, concrete facts demonstrating . . . harm.'" *Twin Rivers*, 934 F.3d at 612–13 (citations omitted).

Importantly here, SEIU must prove it had Article III standing on the day it sought review in this Court. *See Sierra Club*, 292 F.3d at 899. That day was May 2, 2025. *See* Dkt. No. 1.

2. SEIU has failed to prove its members were suffering actual or imminent injuries on May 2, 2025 as a result of the Joint Employer Rule. First, SEIU has failed to identify any particular members or affiliates actually injured by the Rule. Second, union regulatory comments filed in

early 2019 cannot prove that any particular SEIU members were suffering injuries six years later when this petition was filed.

*First*, SEIU fails to identify any particular members who are suffering actual injury as a result of the Joint Employer Rule. SEIU's sweeping and vague assertion that it brings the action on behalf of "hundreds of thousands of members and employees it represents whose bargaining power will be adversely impacted," SEIU Br. 24, is insufficient to establish standing. The Court has held it is "[i]t is 'not enough' for a party asserting associational standing 'to aver that unidentified members have been injured.'" *Twin Rivers*, 934 F.3d at 613 (citation omitted).

Nor is it enough for SEIU to aver that some of its members are probably suffering injuries. In *Summers v. Earth Island Institute*, 555 U.S. 488, 498–499 (2009), the Supreme Court held the "requirement of naming the affected members has never been dispensed with in light of statistical probabilities, but only where *all* the members of the organization are affected by the challenged activity." The Joint Employer Rule has not injured every single member of SEIU, as SEIU itself concedes. *See* SEIU Br. at 25 (emphasis added) (SEIU claiming the Rule

would harm its affiliates' ability to represent "*some members* employed by contractors").

Indeed, only a small subset of SEIU members could even conceivably be impacted by the Rule—those members who arguably might have two employers. And even individuals in that small subset would not have Article III standing to challenge the Rule unless they are (1) suffering an actual or imminent injury that is (2) fairly traceable to the Rule's standard and that (3) would be redressed by the Rule being invalidated. SEIU has identified no such individuals.

The only documents that SEIU cites to support its claim to standing are regulatory comments that it and an affiliate filed in early 2019 opposing the proposed rule. SEIU Br. 25. SEIU claims the comments explained how the Rule will harm the ability of SEIU affiliates to "bargain for better working conditions for some members employed by contractors." *Id.* But these comments are not declarations, affidavits, or firm evidence—they are just self-serving SEIU arguments against a proposed regulation.

The portions of the 2019 comments that SEIU cites in the standing section of its brief make generic predictions about the future Rule's

impact. *Id*. Specifically, the third page of 1199SEIU Healthcare Workers East's comment consists of generalizations and does not identify any particular entity that is supposedly refusing to bargain with the union because of the Joint Employer Rule. *See* 1199SEIU United Healthcare Workers East, Cmt, NLRB 2018-0001-27524, at 3. SEIU's comment has the same hypothetical "examples" that SEIU rehashes on page 25 of its brief. *See* SEIU, Cmt., No. NLRB-001570, at 23–24.

In support of one example, SEIU's comment cites two unfair labor practice charges filed by janitorial workers *against* an SEIU affiliate, which SEIU blames on that affiliate not be able to bargain with a building owner. *Id*. (citing *SEIU Local 32BJ*, NLRB Case No. 01-CB-107860 (withdrawn Oct. 22, 2013); *SEIU 32B-32J (Collins Bldg. Servs.)*, NLRB Case No. 22-CB-227879 (withdrawn Jan. 15, 2019)). The filing of these charges does not prove anything—the unproven charges were withdrawn prior to any merit determination.[2] The charges certainly do not prove the Rule was actually injuring SEIU in May 2025. The charges were withdrawn in 2013 and 2019, *see* fn.2, *infra*, which is not only well before

[2] *See* NLRB Dockets at https://www.nlrb.gov/case/01-CB-107860 and https://www.nlrb.gov/case/22-CB-227879.

the Rule became effective, but many years before SEIU filed this petition for review.

SEIU's predictions and thought experiments concerning a proposed federal rule it dislikes are no substitute for evidence the Rule actually harmed its members. The most basic requirement for a cognizable Article III injury is that the injury is "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560. SEIU offers this Court nothing but conjecture and hypotheticals. The comments upon which SEIU relies fall far short of being concrete evidence of standing. *See Twin Rivers*, 934 F.3d at 614 (holding petitioner failed to establish standing because it did not identify specific association members who actually suffered injury as a result of the challenged rule); *Int'l Bhd. of Teamsters*, 429 F.3d at 1134–35 (holding union failed to establish associational standing to challenge rule because it failed to put evidence in the record proving that specific union members were actually harmed by the rule).

*Second*, the comments cited by SEIU cannot establish standing because they were filed in January or February 2019—which is over six (6) years before SEIU filed this petition for review on May 02, 2025. To state the obvious, regulatory comments filed in early 2019 cannot prove

the Rule was actually injuring any particular SEIU member or affiliate in May 2025.

This is true even if those comments had provided concrete proof that an SEIU member or affiliate was actually being harmed by a joint employer dispute prior to February 2019 (which they did not). The comments would still not prove that any member was still being harmed six years later. The dispute could have ended long ago.

The 2019 comments also cannot establish the two other prerequisites for Article III standing: that, on May 5, 2025, SEIU members were suffering injuries that are both directly traceable to the Joint Employer Rule and that would be redressed by the Rule being set aside. The outcome of any joint employer dispute involving an SEIU member prior to February 2019 might not be impacted by the Board's readjustment of its joint employer standard in the Rule.

In *Summers*, the Supreme Court rejected a plaintiff's claim of associational standing because the evidence it submitted reflected past conduct rather than showing that the challenged regulation resulted in a current injury or an imminent risk of future injury. 555 U.S. at 495.

SEIU's reliance on comments filed in early 2019 to establish standing in May 2025 suffers the same fatal flaw.

3. SEIU's citations to *AFGE v. FLRA*, 25 F.4th 1, 4 (D.C. Cir. 2022) and *NTEU v. Chertoff*, 452 F.3d 839, 853 (D.C. Cir. 2006) do not relieve SEIU of its burden to cite evidence proving that identifiable SEIU members were actually suffering injuries in May 2025 under the Rule. There is no union exception to Circuit Rule 28(a)(7) and cases like *Summers*, *Sierra Club* and *Twin Rivers*. In *International Brotherhood of Teamsters*, this Court dismissed a union's challenge to a federal rule because that union failed to put evidence into the record proving that specific union members were actually harmed by the challenged rule. 429 F.3d at 1134–35.

*AFGE* and *Chertoff* stand for the proposition that a fundamental diminishment of a union's bargaining position can be a cognizable injury under Article III. *AFGE*, 25 F.4th at 4; *Chertoff*, 452 F.3d at 853. But even if that is true as a legal matter, the reality remains that SEIU failed to meet its burden of proving, *as a factual matter*, that its members or its affiliates were actually suffering such an injury in May 2025.

The unions in *AFGE* and *Chertoff* satisfied their burden of proof. *AFGE* concerned a September 30, 2020 decision by the Federal Labor Relations Authority ("FLRA") holding that federal agencies no longer had to bargain with federal-employee unions over policies that had been mandatory subjects of bargaining for decades. 25 F.4th at 2. The three major federal-employee unions filed petitions for review within 60 days of that decision.[3] The petitioner unions established standing because, when they filed their petitions for review, the FLRA decision had already significantly diminished their bargaining power vis-à-vis all federal agencies with which they bargained. *Id.* at 4.

*Chertoff* similarly involved a union challenge to federal regulation that significantly reduced the subjects that a federal agency (DHS) had to bargain over with those unions. 452 F.3d at 853. "As soon as DHS issued its Final Rule, the Unions filed suit." *Id.* at 850. The Court found the petitioner unions "convincingly explain[ed] the 'immediate practical impact' of the Final Rule on their organizations and their members" and held "[t]these harms are far from conjectural." *Id.* at 853.

---

[3] *See* Pet. Br. at * 5, *AFGE v. FLRA*, Nos. 20-1396, 20-1397, 20-1404, 2021 U.S. D.C. CIR. Briefs Lexis 8 (Feb. 10, 2021).

In *AFGE* and *Chertoff*, the petitioner unions established that, when they filed their actions, certain federal agencies were actually not bargaining with those unions over identifiable matters because of the challenged decision or rule. Unlike in those cases, SEIU has failed to prove that, when it initiated this action, *any particular employer* was actually refusing to bargain with SEIU over identifiable matters because of the Rule. Indeed, comments filed in early 2019 cannot possibly prove that was actually occurring six years later in May 2025.

Overall, SEIU has failed to submit evidence, or point to evidence in the record, that proves SEIU had Article III standing when it filed its petition for review. Under this Court's precedents, SEIU cannot correct this error in its reply brief because SEIU could not have reasonably believed its standing was "self-evident." *Int'l Bhd. of Teamsters*, 429 F.3d at 1135. The only thing self-evident is that regulatory comments filed in early 2019 cannot prove that a party is actually suffering injuries in May 2025. SEIU's petition for review should be dismissed.

### B. If the Court Reaches the Merits, It Should Reject SEIU's Expansive Theory as Inconsistent with the Common Law.

The crux of SEIU's position is that an entity having reserved-but-unexercised authority over an essential employment term, in and of

itself, makes that entity a joint employer under the common law. *See* SEIU Br. 21–22, 26–27. The NLRB has already explained why SEIU's theory is inconsistent with common law and conflicts with decisions of this Court and of other courts. NLRB Br. at 24–31. The Foundation will not reiterate those points, but discuss three other problems with SEIU's theory: (1) reserved control alone is generally insufficient to make an entity a singular "employer;" (2) it would render active control irrelevant; and (3) it would wrongfully transform a myriad of arms-length business relationships into joint-employment relationship.

1. *First,* for an entity to be a joint employer of employees under the NLRA, it must amount to a *singular* "employer" of those employees under NLRA Section 2(2). "The label 'joint employer' . . . simply means that multiple entities each qualify as an 'employer' of the same group of 'employees' within the statute's agency-law meaning of the terms." *Chamber of Commerce,* 723 F. Supp. at 503. Indeed, an entity cannot be a joint employer if it is not an "employer" in the first place. There is no merit to the proposition that: 1 Employer + 1 Non-Employer = 2 Joint Employers. To be a joint employer, an entity must first singularly be an employer of the workers at issue.

SEIU's theory fails because reserved-but-unexercised power is generally insufficient to establish a singular employer relationship. A simple hypothetical illustrates the point. Assume a "Business" contracts with a "Contractor" to perform some task. The Contractor actively hires, manages, pays, and otherwise employs its workers. However, the Business has a form of reserved-but-unexercised control over a policy that SEIU claims should make an entity a joint employer, like a reserved "power to implement building-access policies," to "limit interactions between building tenants" and employees, or to require "drug testing" or illness prevention policies. SEIU Br. 39–40.

Now, view the relationship between the Business and those workers in isolation and ignore the Contractor. Would any rational person claim the Business is the employer of the workers solely because that Business could potentially control how the individuals access its building, but does not do so? Or could potentially limit how the individuals interact with the Business's customers, but does not do so? Or could potentially require the workers to abide by illness prevention policies in the Business's workplace, but does not do so? Of course not.

Adding the Contractor back into the picture does not change the result. The Business is not somehow transformed into an employer because the workers have an actual employer (the Contractor). Nor does the presence of the Contractor lower the legal standard for evaluating whether the Business is an employer under NLRA Section 2(2). As this analysis shows, SEIU's theory that reserved-but-unexercised control suffices to make an entity a joint employer fails because such control is generally insufficient to make an entity an employer in the first instance.

2. *Second*, SEIU's theory that reserved-but-unexercised control automatically makes an entity an employer cannot be true because, if it were, then evidence of actual or exercised control would be superfluous and irrelevant. The reserved-control factor would swallow the active-control factor, if not the entire common law test for an employer.

The reason is that, logically, an entity must have authority to control employment terms to actively exercise that control. In other words, one must possess a power to exercise that power. So if an entity just having the power to control an employment term is enough to make it a joint employer under the common law, as SEIU claims, there would be no reason for the NLRB or courts to ever consider whether the entity

actually exercised that control. It would not matter. An ability to control an employment term would be the alpha and the omega of any analysis. That cannot be correct because it is undisputable that actively exercised control is a significant part of the common law analysis. *See* NLRB Br. 24–31; *Browning-Ferris Indus. of Cal. v. NLRB*, 911 F.3d 1195, 1209 (D.C. Cir. 2018).

3. *Finally*, the Court should reject SEIU's expansive theory because it would transform routine contracting relationships into joint-employment relationships. In *Browning-Ferris*, the Court held the Board's joint employer standard must differentiate between "aspects of indirect control relevant to status as an employer, and those quotidian aspects of common-law third-party contract relationships." 911 F.3d at 1220. For example, "types of employer decisions that set the objectives, basic ground rules, and expectations for a third-party contractor cast no meaningful light on joint-employer status." *Id.* A joint employer standard must avoid "trenching on the common and routine decisions that employers make when hiring third-party contractors and defining the terms of those contracts." *Id.* at 1219.

A joint-employer standard that makes reserved-but-unexercised authority dispositive crosses that line and then some. The U.S. District Court for the Eastern District of Texas recognized as much when vacating the Board's 2023 joint employer rule. *Chamber of Commerce*, 723 F. Supp. 3d at 519. That rule stated that an entity "[p]ossessing the authority to control one or more essential terms and conditions of employment is sufficient to establish status as a joint employer, regardless of whether control is exercised." *Id.* at 515 (quoting 88 Fed. Reg. at 74,018 (Oct. 27, 2023). That regulatory language tracks SEIU's position here—that a party "exercising indirect control over, or possessing reserved authority to control, one or more essential terms is itself *sufficient* to establish status as a joint employer, making no allowance for a further test under the common law of agency." *Id.* (emphasis in original).

The district court rejected that position because it "would treat virtually every entity that contracts for labor as a joint employer because virtually every contract for third-party labor has terms that impact, at least indirectly, at least one of the specified 'essential terms and conditions of employment.'" *Id.* at 516. After providing several examples

of the excessive reach of that standard, the Court found "[t]hat reach exceeds the bounds of the common law and is thus contrary to law." *Id.*

The district court also explained that "[t]reating a general contractor as an employer of a subcontractor's employees in this way runs headlong into the Supreme Court's holding in *NLRB v. Denver Building & Construction Trades Council*, 341 U.S. 675 (1951)." *Id.* In that case, the Supreme Court held

> the fact that the contractor and subcontractor were engaged on the same construction project, and that the contractor had some supervision over the subcontractor's work, did not eliminate the status of each as an independent contractor *or make the employees of one the employees of the other*.

341 U.S. at 689–90 (emphasis added).

SEIU's proposed expansion of the common law joint-employer standard differs little from the standard the district court rejected in *Chamber of Commerce*. The Court should reject SEIU's standard for the same reasons.

## CONCLUSION

The Court should deny SEIU's petition for review of the Rule.

Respectfully submitted,

/s/ William L. Messenger
William L. Messenger
Alyssa K. Hazelwood
c/o National Right to Work Legal
Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
(703) 321-8510
wlm@nrtw.org
akh@nrtw.org

Date: March 9, 2026

## CERTIFICATE OF COMPLIANCE

I hereby certify this brief contains 3,780 words in accordance with the MS Word count, is typed in 14-point Century Schoolbook typeface and complies with the type-volume limitations of FRAP 29(a)(5).


/s/ William L. Messenger
William L. Messenger
c/o National Right to Work Legal
Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
(703) 321-8510
wlm@nrtw.org


Date: March 9, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. I further certify that copies of the foregoing brief were filed electronically with this Court's CM/ECF system on this date, which will send an electronic notice to all registered parties and counsel.

/s/ William L. Messenger
William L. Messenger
c/o National Right to Work Legal
Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
(703) 321-8510
wlm@nrtw.org

Date: March 9, 2026